Jeffrey MASSING, Administrator of the estate of Christopher Massing, deceased; Sandra Massing and Jeffrey Massing, heirs at law of Christopher Massing, deceased, Petitioner,

v.

The SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–5078.

United States Court of Appeals, Federal Circuit.

Feb. 21, 1991.

William P. Ronan, Cloon & Bennett, Overland Park, Kan., submitted for petitioner.

Steve Frank, Dept. of Justice, Washington, D.C., submitted for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle, Washington, D.C.

Before RICH, NEWMAN, and MICHEL, Circuit Judges.

PER CURIAM.

Petitioners appeal from the February 22, 1990 judgment of the United States Claims Court (Merow, J.), case no. 89–51 V, dismissing petitioners' claim for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–10 through 300aa–34 (1988) (hereinafter §§ 10 through 34 of the Act). 19 Cl.Ct. 511. We *affirm.*

## BACKGROUND

This case arises from the death of ten-week old Christopher Massing. On January 13, 1986, Christopher was vaccinated with Diphtheria, Pertussis and Tetanus (DPT) vaccine in the office of his pedia-

trician, Dr. Joseph Wise. The next day, Christopher was found dead, and it is alleged that his death was caused by a reaction to the DPT vaccine.

Petitioners subsequently brought a negligence suit in Kansas district court not only against Dr. Wise, but also against Lederle Laboratories, the manufacturer of the DPT vaccine, Dr. Ben Rubin, Jr., and Dr. Ben Rubin, Jr., M.D., P.A. Dr. Rubin was the office mate of Dr. Wise, and was sued on a theory that an agency relationship existed between Dr. Rubin and Dr. Wise such that Dr. Rubin was responsible for the actions of Dr. Wise under the doctrine of respondeat superior.

On January 21, 1988, petitioners settled with Dr. Rubin and Dr. Rubin, P.A. for $50,000. By the terms of the settlement agreement, neither Dr. Rubin nor his P.A. admitted liability, and petitioners maintained their rights as against the other defendants. However, petitioners subsequently voluntarily dismissed, without prejudice, their suit as to the remaining defendants, and on May 8, 1988, filed a petition in the United States Claims Court, seeking recovery under the Act.

Several sections of the Act are relevant to the issues raised by this case. Section 11(a)(7), which is one of the general rules concerning who may bring a petition under the Act, states that:

If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition under subsection (b) of this section for such injury or death.

Section 11(c)(1) requires petitioners to file an affidavit which demonstrates entitlement to recovery under the Act. One of the elements necessary in the affidavit, as prescribed by § 11(c)(1)(E) is an averment that the petitioner

has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death.

Finally, § 13(a)(1)(A) requires a petitioner to prove the matters set forth in § 11(c)(1) by a preponderance of the evidence.

In their petition to the Claims Court, petitioners included an affidavit which indicated that they had not previously collected an award or settlement of a civil action for the vaccine-related death, as required by § 11(c)(1)(E). However, they told the Special Master assigned to the case about the $50,000 settlement with Dr. Rubin at a hearing held October 20, 1989. Petitioners argued before the Special Master that a prior settlement would bar their claim only if it was with an "administrator or manufacturer" of the drug, as specified in § 11(a)(7), and that neither Dr. Rubin nor Dr. Rubin, P.A. qualified as an administrator or manufacturer of the DPT vaccine.

The Special Master recommended dismissal of petitioner's claim on two grounds. First, he found that petitioners had failed to prove by a preponderance of the evidence the requirement of § 11(c)(1)(E). Second, he found that petitioner's claim was barred by § 11(a)(7), because the settlement with Dr. Rubin was, in fact, a settlement with an "administrator" of the drug. As evidence to support the latter finding, the Special Master relied primarily on petitioner's assertions to that effect in the complaint filed in Kansas district court. In an opinion dated February 13, 1990, the Claims Court adopted the Special Master's recommendation.

## OPINION

The agency urges us to affirm the Claims Court on the grounds that Dr. Rubin or his P.A. was an "administrator" of the vaccine under § 11(a)(7), citing *Wiggins v. Secretary of HHS*, 898 F.2d 1572 (Fed.Cir.1990). We see no need to reach this question, since we agree with the Claims Court's alternative basis for its decision, specifically, that §§ 13(a)(1)(A) and 11(c)(1)(E) preclude compensation under the Act. Section 13(a)(1)(A) requires that petitioners prove the matters set forth in § 11(c)(1) by a preponderance of the evidence. One of these matters is that the petitioner "has not previously collected an

award or settlement of a civil action for damages for such vaccine-related injury or death." This section is not limited by the "vaccine administrator or manufacturer" language of § 11(a)(7). The Claims Court found that the estate of Christopher Massing had collected a settlement from Dr. Rubin and Dr. Rubin, P.A. based on the vaccine-related death. We do not consider this finding to be clearly erroneous. *Hankins Constr. Co. v. United States*, 838 F.2d 1194, 1195 (Fed.Cir.1988).

Petitioner makes two arguments in an effort to avoid the preclusive effect of §§ 13(a)(1)(A) and 11(c)(1)(E). First, petitioner argues that § 11(a)(7) somehow controls § 11(c)(1)(E), so that the words "from a vaccine administrator or manufacturer" must be read into the latter section. We disagree. Section 11(c) is not controlled by § 11(a); in fact, the opposite is true, as the requirements of § 11(c) are incorporated into § 11(a). For example, § 11(a)(1) states that a proceeding is initiated by filing a "petition containing the matter prescribed by subsection (c) of this section." Further, the section that petitioner relies on, § 11(a)(7), refers to a "petition under subsection (b) of this section." Section 11(b)(1), in turn, indicates that only a person who "meets the requirements of subsection (c)(1) of this section" may file a petition.

Thus, the plain meaning of the statute is that the word "petition" throughout § 11 is limited to a petition which meets the requirements of § 11(c). Petitioner is attempting to construe the statute contrary to its plain meaning, and in order to do so, must show clear legislative history supporting its asserted construction. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988). Petitioner has failed to do so.

Second, petitioner argues that only Sandra and Jeffrey Massing, as heirs at law of Christopher Massing, entered into a settlement with Dr. Rubin and his P.A., and that therefore the estate of Christopher Massing is not barred from recovery under the Act. Petitioners did not raise this argument until their post-judgment petition for

**1136**

reconsideration. In response to the argument, the Claims Court found that despite the fact that Jeffrey Massing was not officially designated administrator of Christopher Massing's estate until two days after the settlement agreement was signed, the estate's claim was settled in the settlement agreement. We do not consider this finding to be clearly erroneous.

AFFIRMED.