Ruth Cosette **ABBOTT**, as legal
representative of David Bradley
White, deceased, Petitioner,

v.

**SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Respondent.**

No. 90–1637 V.

United States Court of Federal Claims.

March 9, 1993.

Richard B. Arrotta, Tucson, AZ, for petitioner.

Rachel V. Lee, with whom were Acting Atty. Gen. Stuart M. Gerson, Director Helene M. Goldberg, Deputy Director John Lodge Euler, and Asst. Director Charles R. Gross, Washington, DC, for respondent.

## OPINION

WIESE, Judge.

The National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C.A. §§ 300aa–1–300aa–33 (West 1991 & Supp.1992) permits an award of compensation to the estate of a decedent whose death ensued from a vaccine-related injury or from an acute complication of such an injury. In this case, the special master authorized an award for the death of petitioner's adult son whose drowning was traceable to a neurological impairment (a residual seizure disorder) resulting from the administration of a vaccine in early childhood.

The issue we now have before us on respondent's appeal is whether the relationship between decedent's vaccine injury and his death satisfies the causal standards of the Vaccine Act. Specifically, the question is whether decedent's death may be considered an acute complication or sequela of a vaccine injury. We hold that it may not and therefore vacate the special master's decision and order the petition be dismissed.

I

David Bradley White became afflicted with a seizure disorder following administration of a series of diphtheria-pertussis-tetanus (DPT) shots in 1964. Ultimately, the neurological damage associated with this condition required his placement in a residential care facility (a group home) for developmentally disabled adults.

During the evening of September 5, 1987, David was assisted in his bath by a member of the group home's staff. The staff member allowed David to remain unattended in the bathtub for a brief period and it was during this interval that David experienced a seizure that led to his drowning. David's death certificate records the immediate cause of death as "drowning with aspiration" and identifies the event as "due to or as a consequence of seizure disorder."

Based on this opinion and its later endorsement by petitioner's expert (in the proceedings subsequently brought before the special master), the special master concluded that David died "from the consequences of the presumptively vaccine-related residual seizure disorder he sustained after his October 7, 1964 DPT vaccination." *Abbott v. Secretary of the Dep't of Health & Human Servs.*, No. 90–1637V, slip op. at 7, 1992 WL 300899 (Cl.Ct.Sp.Mstr. Oct. 5, 1992). Accordingly, the special master determined that David's estate was entitled to the $250,000 death payment authorized by the Vaccine Act.

## II

Section 2114 of the Vaccine Act (42 U.S.C.A. § 300aa–14) contains a table of the vaccine-related injuries for which compensation may be awarded. In the case of the DPT vaccine, the listed injuries include anaphylaxis[1] (and anaphylactic shock), encephalopathy[2] (and encephalitis), shock-collapse[3] (and hypotonic-hyporesponsive collapse), and residual seizure disorder.[4] Under the scheme of the Vaccine Act, a table injury is presumed to have been caused by a vaccine where the onset of that injury (*i.e.*, the first symptom) occurs within a specified time period. (In the case of a residual seizure disorder, the time period is three days).

In addition to the listed injuries, the table also includes as a basis for compensation "[a]ny acute complication or sequela (including death)" of a listed injury, provided the first symptom of that listed injury had occurred within the prescribed time period. Since it is agreed that David's vaccine injury satisfies the temporal requirements of the statute (the first symptoms of his seizure disorder appeared within the prescribed three-day period), the single question we address is whether David's death may be considered an "acute complication or sequela" of his residual seizure disorder.

In determining the meaning of this phrase, we start with the proposition that the intention of a statute is to be found in the words that it contains. Unless the context shows otherwise, words of everyday usage are to be accorded their ordinary and everyday meaning, *Avery v. Commissioner*, 292 U.S. 210, 214, 54 S.Ct. 674, 676, 78 L.Ed. 1216 (1934); similarly, "where Congress has used technical words or terms of art, 'it [is] proper to explain them by reference to the art or science to which they [are] appropriate.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 201, 94 S.Ct. 2223, 2231, 41 L.Ed.2d 1 (1974) (quoting *Greenleaf v. Goodrich*, 101 U.S. 278, 284, 25 L.Ed. 845 (1880)).

In this case, our concern focuses on a statute, 42 U.S.C.A. § 300aa–14, whose words are not those of common usage. Rather, they are words of specialization drawn from the vocabulary of the field of medicine. Indeed, that point is brought home by the fact that, in addition to its list of table injuries, the statute also contains a

---

**1.** Anaphylaxis refers to "a manifestation of immediate hypersensitivity … in which exposure of a sensitized individual to a specific antigen or hapten results in life-threatening respiratory distress, usually followed by vascular collapse and shock and accompanied by urticaria [hives], pruritus [itching], and angioedema [swelling]." Dorland's Ill. Medical Dictionary 72 (27th ed. 1988).

**2.** Encephalopathy refers to "any degenerative disease of the brain." *Id.* at 550.

**3.** Shock (and shock collapse) refers to "a condition of profound hemodynamic and metabolic disturbance characterized by failure of the circulatory system to maintain adequate perfusion of vital organs." *Id.* at 1515.

**4.** Seizure refers to "an attack of epilepsy," *i.e.*, "paroxysmal transient disturbances of brain function that may be manifested as episodic impairment or loss of consciousness." *Id.* at 1503; 568.

section titled "Qualifications and aids to interpretation" (42 U.S.C.A. § 300aa–14(b)) that lists the symptoms and other indicia—again, in words common to medical phraseology—from which the likelihood of a vaccine-caused injury may be inferred. Clearly, by its choice of words and interpretive aids, Congress intended this statute to be understood—and to be applied—as it would be by a medical professional. It follows, therefore, that in the context of a statute so technically elaborate, the words "acute complication or sequela" are likewise to be taken as words of art that carry their own precise and special meaning.

What then are the meanings of the words in question? To consider first the word "complication," standard medical usage defines that term as "[a] morbid process or event occurring during a disease which is not an essential part of the disease, although it may result from it or from independent causes." Stedman's Medical Dictionary 336 (25th ed. 1990). Put more succinctly, it is "a disease or diseases concurrent with another disease." Dorland's Ill. Medical Dictionary 368 (27th ed. 1988). As to the term "sequela," this is defined as "[a] condition following as a consequence of a disease," Stedman's at 1407, and also as "any lesion or affection following or caused by an attack of disease." Dorland's at 1509.

 Guided by these definitions, it is clear that the circumstances of David's

death do not bring that event within the framework of a table injury. As indicated, the terms "complication" and "sequela" refer to somatic conditions or events recognizable as the pathological sequence or result of an existing disease or disorder or as an independent accompaniment of such a disease or disorder.[5] David's death was not due to pathological forces set in motion by his vaccine injury. Rather, his death was the result of a suffocation brought on by an external force—the filling of his lungs with water. That fact is confirmed by the medical examiner's autopsy report which lists as the cause of David's death "drowning with aspiration of gastric content secondary to seizure disorder."[6] His death, therefore, was an accident, precipitated perhaps by his disorder but not the *medical* consequence of that disorder.

### III

The special master's decision holding David's death to be a compensable table injury reflects an incorrect understanding of the term "acute complication or sequela" and is therefore wrong as a matter of law. David Bradley White's death was not a table injury. Accordingly, we grant respondent's motion. The decision of the special master is reversed and the petition is ordered dismissed.

---

**5.** Although not controlling in this litigation, it is instructive to note that the Secretary of Health and Human Services has recently proposed a rule to clarify that, under the Vaccine Injury Table, a "sequela" requires a showing that a subsequent event or condition was *caused in fact* by a table injury. The proposed rule reads as follows:

> The term *"sequela"* means a condition or event which is caused by a condition listed in the Vaccine Injury Table. The petitioner must prove by a preponderance of the evidence that the condition listed in the Vaccine Injury Table is the cause-in-fact of the resulting sequela. The petitioner must prove a logical sequence of cause and effect supported by a generally accepted medical or scientific explanation.

57 Fed.Reg. 36882, 36884 (1992) (to be codified at 42 C.F.R. pt. 100) (proposed Aug. 14, 1992).

As the court reads it, the proposed rule offers a definition of sequela that corresponds with the interpretation reflected in this opinion.

**6.** During the argument of this case, petitioner's counsel made the point that the record before the special master did not resolve the question whether David's drowning was due to the aspiration of water or the aspiration of vomitus. Hence, it was argued that the case should be remanded for further testimony on this point. The court does not accept this argument. As noted, the autopsy report lists the cause of David's death as a "drowning *with* aspiration of gastric content...." and not as a drowning *by* aspiration of gastric content. The language of the autopsy report is inconsistent with counsel's position. So too is the affidavit of David's mother, petitioner in this case. Therein she ascribes the cause of death as "drowning in a bathtub due to a seizure."