19 F.3d 39
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ruth Cosette ABBOTT, as legal representative of David
Bradley White, deceased, Petitioners-Appellants,
v.
SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Respondent-Appellee.
 No. 93-5129.
 United States Court of Appeals, Federal Circuit.
 Feb. 7, 1994.
 
 Before NIES, Chief Judge, MAYER, and MICHEL, Circuit Judges.
 MICHEL, Circuit Judge.
 DECISION
 Ruth Cosette Abbott, on behalf of the estate of her deceased son, David Bradley White, appeals from the March 9, 1993 judgment of the United States Court of Federal Claims dismissing her petition for compensation under the National Childhood Vaccine Injury Act (Vaccine Act or Act), 42 U.S.C. Secs. 300aa-1 through 300aa-34 (1988 and Supp.1992). 27 Fed.Cl. 792 (1993). The Special Master concluded that the petition was not barred under 42 U.S.C. Sec. 300aa-11(c)(1)(E) by a previous settlement of an Arizona state court wrongful death action and awarded compensation for David's death in the amount of $250,000. The government filed a motion for review solely on the issue of whether the petition was barred under section 300aa-11(c)(1)(E). The Court of Federal Claims dismissed the petition, holding that recovery was precluded because there was an intervening cause of death such that David's death was not a "sequela" of a vaccine-related injury, as the court construed that statutory term. The court did not decide whether the petition was barred for double recovery, however.
 We conclude that the petition is not barred because the settlement covered only damages for injuries to David's statutory beneficiaries and not for David's own injuries. We affirm the Court of Federal Claims' holding that the Special Master applied a legally incorrect definition of sequela based on legal notions of proximate cause, rather than determining whether the death was medically recognizable as a pathological sequence or result of a disease or injury. Because petitioner was not given the opportunity to develop an evidentiary record on the issue of causation before the Special Master, however, we hold that the Court of Federal Claims abused its discretion in dismissing the petition based on its finding on the incomplete record that David's death was not a sequela within the meaning of the Vaccine Act. Accordingly, the case is remanded for a further evidentiary hearing before the Special Master and findings on the cause and manner of death. The Court of Federal Claims' decision is therefore affirmed-in-part, reversed-in-part, and the case is remanded.
 
 DISCUSSION
 
 1
 The facts are set forth in the opinions of the Court of Federal Claims, Abbott v. Secretary of the Department of Health & Human Services, 27 Fed.Cl. 792 (1993), and the Special Master, Abbott v. Secretary of the Department of Health & Human Services, No. 90-1637 V, slip op. (Ct.Cl.Sp.Mstr. Oct. 5, 1992). Familiarity with these opinions is presumed and only those facts necessary for our holding are recited below.
 
 I. Background
 
 2
 Ms. Abbott, as legal representative of her son David's estate, seeks recovery under the Vaccine Act for his vaccine-related death. David was diagnosed as having a residual seizure disorder resulting from vaccinations he received as an infant in 1964. As a result of his injuries, David was placed in a residential care facility in Arizona. On September 5, 1987, a group home staff member was assisting David with his bath. The staff member left David alone for a few minutes, during which time David suffered a seizure in the bathtub and drowned.
 
 
 3
 Ms. Abbott filed a wrongful death action in Arizona against the group home and various state agencies. The action was settled for $300,000, and Ms. Abbott dismissed the suit with prejudice on October 20, 1989.
 
 
 4
 On September 27, 1990, petitioner filed the subject petition for compensation under the Act. The government moved to dismiss on the ground that Ms. Abbott's settlement in the civil suit barred recovery under section 300aa-11(c)(1)(E) of the Act, which provides in relevant part:
 
 
 5
 (c) A petition for compensation under the Program for a vaccine-related injury or death shall contain--
 
 
 6
 (1) ... an affidavit and supporting documentation, demonstrating that the person who suffered such injury or who died--
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 (E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death,....
 
 
 10
 The Special Master discerned no bar because he concluded Arizona law recognizes a separate cause of action for injuries to the named statutory beneficiaries apart from the claims assertable on behalf of a decedent. Therefore, the Special Master concluded that under Arizona law the settlement was Ms. Abbott's recovery in her own individual capacity. Consequently, he concluded that neither David himself nor his estate had previously recovered damages for the vaccine-related death.
 
 
 11
 On the merits, the Special Master found David's estate was entitled to an award of $250,000 based on a preponderance of evidence that the death was the direct consequence of the presumptively vaccine-related residual seizure disorder. Abbott, No. 90-1637 V, slip op. at 7. The Special Master specifically acknowledged that "he offered to issue a decision on entitlement, allowing respondent to seek review of the legal issue [of the statutory bar] immediately without conceding liability." Id. at 7 n. 9. The Special Master further stated that he realized "that respondent has not obtained a medical report in this case, has not filed a Rule 4 report in this case, and has not had an opportunity to present evidence that David's seizures and death were due to factors unrelated to the administration of the October 7, 1964 DPT vaccine." Id.
 
 
 12
 The government filed a motion for review in the Court of Federal Claims on the sole issue of whether the petition was barred by the prior settlement. The court disposed of the case on a different ground, however, holding as a matter of law that there could be no recovery because David's death was not a sequela of the residual seizure disorder due to intervening cause of drowning. The court also held that the Special Master applied a legally incorrect definition of sequela as being merely a subsequent link in a chain of related events. The court concluded that the proper definition of "sequela" under the statute refers to "somatic conditions or events recognizable as the pathological sequence or result of an existing disease or disorder or as an independent accompaniment of such a disease or disorder." 27 Fed.Cl. at 794.
 
 
 13
 The court then found that, based on the wording of one line in the autopsy report, David's death was caused by bath water in his lungs, not aspiration of vomit from the seizure. Judgment was entered setting aside the decision of the Special Master and dismissing the petition.
 
 II. Issues on Appeal
 
 14
 On appeal, petitioner first argues that the court abused its discretion by ruling on a matter that was not raised in the motion for review. Therefore, petitioner asserts that the dismissal should be set aside, the Special Master's conclusion of law that recovery is not barred by section 300aa-11(c)(1)(E) and finding that petitioner was entitled to recover reinstated, and judgment entered on the Master's decision. Alternatively, petitioner asks that the decision of the Court of Federal Claims be reversed and that the case be remanded to the Special Master for an evidentiary hearing on entitlement. Finally, petitioner asks this court to hold as a matter of law that the petition is not barred under section 300aa-11(c)(1)(E) by the prior settlement of the wrongful death action.
 
 
 15
 The government asserts, as it did in its motion for review, that compensation is barred under section 300aa-11(c)(1)(E) by the previous wrongful death settlement. The first issue then is whether a bar arises from the settlement. Additionally, the government argues that it was not error for the Court of Federal Claims to consider the legal definition of "sequela" as applied by the Special Master, or to find on the merits that petitioner had not established entitlement under the Vaccine Act. The second issue is whether the judge's dismissal based on his fact finding on sequela may stand.
 
 
 16
 We will address both issues raised on appeal, beginning with the threshold issue of the statutory bar under the Vaccine Act.
 
 III. The Bar
 A. The Vaccine Act
 
 17
 Under section 300aa-11(c)(1)(E) of the Vaccine Program, a petitioner must prove that the "person who suffered the injury or who died ... has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death."[1] "Vaccine-related injury or death" is defined in the statute as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table,...." 42 U.S.C. Sec. 300aa-33(5) (1988) (emphasis added). In the Arizona wrongful death action, Ms. Abbott obtained a settlement for damages based on David's death which was associated with such a vaccine whether or not, as found by the Court of Federal Claims judge, the chain of proximate causation was broken by the negligence of the staff at the home where David died.[2] Therefore, Ms. Abbott can petition and David's estate can recover under the Vaccine Act if petitioner can show that the wrongful death settlement did not include any compensation for David's own injuries, as opposed to hers.
 
 B. Arizona Law
 
 18
 Petitioner insists that she recovered only for her own injuries (here essentially financial and emotional injuries resulting from David's death)[3] in the Arizona settlement because she brought the action in an individual capacity and David's estate was not a party. In support, she cites Arizona's Wrongful Death Act, Ariz.Rev.Stat.Ann. Sec. 12-611 et seq. (1992), which provides that a parent may maintain an action for the death of the child and that an action may instead be brought in the name of the decedent's estate only if no husband or wife, children or parents survive. Ariz.Rev.Stat.Ann. Sec. 12-612(A)-(C) (1992). Ms. Abbott argues that David's estate did not make a prior recovery so as to bar the petition under section 300aa-11(c)(1)(E).
 
 
 19
 Under section 12-612(A) of the Arizona wrongful death statute, such an action "shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate." Ariz.Rev.Stat. Sec. 12-612(A) (emphasis added). Additionally, under Section 12-612(B), "[e]ither parent may maintain the action for death of a child...." Ariz.Rev.Stat. Sec. 12-612(B). Plainly, Ms. Abbott could not sue for and on behalf of the estate. Ariz.Rev.Stat.Ann. Sec. 12-612(A).
 
 
 20
 Because the statute further provides in section 12-612(C) that any recovery "shall be distributed to the parties provided for in subsection A in proportion to their damages," however, Ms. Abbott clearly could not maintain a wrongful death action exclusively for her own personal damages.[4] Rather, she maintained the action on behalf of and as statutory trustee for all the statutory beneficiaries of David, here apparently herself and David's father. Summerfield v. Superior Court of the State of Arizona, et al., 144 Ariz. 467, 698 P.2d 712 (1985); In re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877 (1966).
 
 
 21
 The critical determination is not the identity of the parties in the state action, however, but rather the nature of the damages obtained. That is, whether the recovery was solely for the injuries of the named statutory beneficiaries, or whether there was also a recovery for injuries of the deceased as well.[5] The next section of the Arizona Wrongful Death Act removes any doubt as to whose injuries are being compensated.
 
 
 22
 Under Ariz.Rev.Stat.Ann. Sec. 12-613, "the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties." (emphasis added). In a wrongful death action not brought in the name of the estate, the Arizona courts have interpreted this provision to provide damages only for the injuries suffered by the statutory beneficiaries themselves, not for the injuries suffered by the deceased. Summerfield, 144 Ariz. at 476, 698 P.2d at 721 ("[I]n enacting the Wrongful Death Statute of 1887, ..., the Legislature explicitly recognized the legal right of the survivors to be compensated for their loss resulting from the victim's death.") (emphasis added); Nunez v. Nunez, 25 Ariz.App. 558, 545 P.2d 69 (1976) (the jury must specifically find the amount of damages sustained by each beneficiary); Huebner v. Deuchle, 109 Ariz. 549, 550, 514 P.2d 470, 471 (1971) (the statute "confers an original and distinct claim for the damages sustained by named statutory beneficiaries. It is not derived from nor is it a continuation of claims which formerly existed in the decedent."). Therefore, recovery in an Arizona wrongful death action where any statutory beneficiaries survive the deceased is for the damages of the statutory survivors, not for the deceased's own damages or for his estate.[6]
 
 
 23
 Consequently, petitioner has established that no prior recovery was made in this case on behalf of David as the injured person.
 
 
 24
 The government argues, however, that Congress clearly intended only one recovery per vaccine-related death or injury. According to the government, this intent is manifested not only by the prohibition against prior recovery in section 300aa-11(c)(1)(E), but also by three other provisions which make the vaccine fund the recovery source of last resort and the subrogee of petitioner. See 42 U.S.C. Sec. 300aa-15(g) (prohibiting compensation for "any item or service to the extent that payment has been made or can reasonably be expected to be made" otherwise); 42 U.S.C. Sec. 300aa-15(h) (prohibiting any entity providing health benefits from making its payment secondary to payment under the program.); 42 U.S.C. Sec. 300aa-17 (providing for subrogation when program money is paid). The government asserts that the interplay of these four provisions precludes later recovery for the same injury or death.
 
 
 25
 Therefore, the government argues, allowing Ms. Abbott to recover would subvert the clear intent of Congress, because of a prior recovery based on David's vaccine-related death.
 
 
 26
 While the government is correct that double recovery for the child is expressly barred, its argument for a "one recovery per vaccine-related death" rule is fundamentally flawed. The defect lies in the government's failure to consider if the prior recovery was by or on behalf of "the person who suffered such injury or who died." 42 U.S.C. Sec. 300aa-11(c)(1)(E). That alone is what triggers subsection (E) which controls here. In order to be a "double recovery," the previous recovery must compensate the child for its injury or death. Where, as here, the prior recovery, although based on the child's vaccine-related death, was exclusively for injuries to his mother, there was no compensation for injuries covered by the Vaccine Act. Therefore, there was no double recovery.
 
 
 27
 Therefore, we conclude as a matter of law that under section 300aa-11(c)(1)(E) a claim on behalf of the estate is allowable despite the settlement of Ms. Abbott's claim under the Arizona civil wrongful death action.
 
 IV. The Finding on Sequela
 
 28
 In order to prevail, petitioner must still establish entitlement to recovery under the Vaccine Act, however.
 
 A. The Court's Authority
 
 29
 First, petitioner argues that the Special Master's decision on entitlement should be reinstated because the Court of Federal Claims erred by ruling on entitlement where the matter was conceded by the government and not raised in the motion for review.
 
 
 30
 The Vaccine Act requires a party to file a motion for review in order to invoke the jurisdiction of the Court of Federal Claims to review the Special Master's decision, and also provides that a response to the motion shall be filed. 42 U.S.C. Sec. 300aa-12(e)(1). Therefore, the Act contemplates normal procedures, applicable at both trial and appellate levels, that issues not raised are waived and that a tribunal may not force litigation of an issue that was waived, with limited exceptions not applicable here such as questions of jurisdiction. A party controls its own case, including the decision to appeal any or all issues, and "[a] case is decided on the issues formally advanced by the parties in their briefs." Howell v. Merit Sys. Protection Bd., 785 F.2d 282, 285 (Fed.Cir.1986) (Where the government asserted that the only issue before the court was jurisdiction, it thereby conceded the merits and the court had no alternative but to rule against the government.); see also North American Vaccine v. American Cyanamid Co., 7 F.3d 1571, 1578 (Fed.Cir.1993) (Petitioner is bound by counsel's concession at oral argument that it did not contest a portion of the district court's ruling. "Whatever [petitioner's] reasons, we do not review what it chooses to accept."). If the government conceded the issue of entitlement, the Court of Federal Claims should not have reached it.
 
 
 31
 However, in this case it is not sufficiently clear that the government waived or conceded the issue of causation. Although the government did not raise the issue of causation as a separate assignment of error, the government noted that it continued to dispute the finding that David's death was a sequela of his seizure disorder. Moreover, the Special Master noted in his decision that his determination on entitlement was being issued on a partial record so that the government could "seek review of the legal issue immediately without conceding liability." Abbott, No. 90-1637 V, slip op. at 8 n. 9.
 
 
 32
 Therefore, the court's consideration of the entitlement issue was not per se erroneous.
 
 B. Legal Definition of Sequela
 
 33
 Petitioner also asserts that the Court of Federal Claims committed reversible error because it applied a highly technical and narrow reading to the word "sequela," contrary to the spirit of the Vaccine Act. Petitioner contends that the decisions of the court have consistently applied liberal construction to the Vaccine Act to favor compensation, particularly for table injuries. See McClendon v. Secretary of the Dep't of Health & Human Servs., 23 Cl.Ct. 191, 195 n. 8 (1991) ("The legislative history [of the Vaccine Act] seems to suggest that the petitioner's assertions of a table injury should be judged in a most favorable manner."). Therefore, petitioner contends that the Court of Federal Claims' interpretation is unduly restrictive and legally erroneous.
 
 
 34
 "Sequela" is nowhere defined in the Vaccine Act. The Court of Federal Claims noted, however, that the term "sequela" is used in the statute in a table of vaccine-related injuries for which compensation may be awarded. 42 U.S.C. Sec. 300aa-14. In this context, the court determined that sequela was not used in an ordinary sense of the word, but as a term of art in the specialized vocabulary of the medical field. Abbott, 27 Fed.Cl. at 794. Therefore, the court concluded that "Congress intended this statute to be understood--and to be applied--as it would be by a medical professional." Id.
 
 
 35
 The court therefore construed the term "sequela" as it was defined in several well known medical dictionaries as "a pathological sequence or result of an existing disease or disorder." Id. (relying on Stedman's Medical Dictionary (25th ed. 1990) and Dorland's Illustrated Medical Dictionary (27th ed. 1988)). Notably, this is virtually the same definition that was affirmed by this court in Munn v. Secretary of the Department of Health & Human Services, 970 F.2d 863, 867, 872 (Fed.Cir.1992) (affirming definition of sequela as "a pathological condition resulting from a disease").
 
 
 36
 Consequently, the court concluded that the Special Master's application of the term sequela in a strictly temporal sense was legally erroneous. We discern no error in the Court of Federal Claims' definition of sequela or in its determination that the Special Master erred.
 
 C. Finding on Sequela
 
 37
 Finally, petitioner asserts that the Court of Federal Claims abused its discretion in finding that David's death was caused by drowning in water, and therefore was not a sequela of his seizure disorder, because there had been no hearing or opportunity for petitioner to enter evidence on that issue. In fact, petitioner notes that medical causation was never an issue before the Special Master, and therefore, no factual record was made on this point. Petitioner argues that she should be permitted to establish a factual record to support her contention that David "drowned" on his own gastric content while in the throes of a seizure and his death therefore was a sequela of the vaccine-related seizure disorder.
 
 
 38
 The Court of Federal Claims found that David's death was "the result of a suffocation brought on by an external force--the filling of his lungs with water." 27 Fed.Cl. at 794. In making this finding, the court relied on the autopsy report which listed the cause of death as "drowning with aspiration of gastric content...." Id. This finding assumes that use of the word "drowning" in the autopsy report necessarily establishes that the actual cause of death was filling of the lungs with water. Although this is one understanding of the term, we note that this is not the only acceptable definition of drowning. Drowning also commonly means suffocation in some liquid other than water such as "to suffocate because of excess of body fluid that interferes with the passage of oxygen from the lung to the tissues...." Webster's Third New International Dictionary of the English Language Unabridged (1976). The autopsy report nowhere defines what is meant by the term "drowning." Therefore, the court's assumption based solely on the use of the word "drowning" is unwarranted, especially where the report after using "drowned" refers to aspiration not of bath water, but gastric content, where the report also indicates that gastric content was found in the lungs but says nothing about water, and where no factual record exists on this point.
 
 
 39
 In view of the fact that the causation issue was never litigated before the Special Master and that petitioner has had no opportunity to factually address this issue, we conclude that in this instance it was an abuse of discretion for the court to rule on the causation of David's death. Therefore, we remand the case for a further evidentiary hearing before the Special Master and findings on the cause and manner of death.
 
 COSTS
 
 40
 Each party shall bear its own costs.
 
 
 
 [1]
 We have previously held that this provision applies to recovery in a civil action against any party for a vaccine-related injury or death, not only against a vaccine administrator or manufacturer. Schumacher v. Secretary of the Dep't of Health & Human Servs., 2 F.3d 1128, 1132 (Fed.Cir.1993); Massing v. Secretary of the Dep't of Health & Human Servs., 926 F.2d 1133, 1135 (Fed.Cir.1991)
 
 
 [2]
 In her response to the government's motion to dismiss before the Special Master, petitioner initially argued that the Arizona action was only based on negligence and that David's death "was contributed to by a third party and was totally unrelated to the administration of the vaccine." This argument has not been renewed, however, because as petitioner herself realizes, the same death cannot be considered to be unrelated to the vaccine for purposes of a state action, but vaccine-related for purposes of a later petition under the Act
 
 
 [3]
 In her complaint, Ms. Abbott sought damages for "loss of consortium, emotional distress, pain and suffering, pecuniary and non-pecuniary damages and further damages compensable pursuant to Ariz.Rev.Stat. Sec. 1-611 et seq."
 
 
 [4]
 In the case of no surviving statutory beneficiaries, section 12-612(C) provides that "if recovery is on behalf of the decedent's estate the amount shall be an asset of the estate." Ariz.Rev.Stat. Sec. 12-612(C)
 
 
 [5]
 If the estate had been a party to the wrongful death action, a petition under the Vaccine Act would clearly be barred. That Ms. Abbott filed both the state action and federal petition is not determinative, however. A prior recovery by a different party in a civil action would bar a petition brought by any legal representative under the Vaccine Act if the prior recovery included compensation for David's vaccine-related injury or death
 
 
 [6]
 Clearly, the types of damages which are recoverable under the Arizona wrongful death action are different from the injuries which are compensated for under the Vaccine Act. In the event of a vaccine-related death, the Vaccine Act provides for "an award of $250,000 for the estate of the deceased." 42 U.S.C. Sec. 300aa-15(a)(2). In the case of survival, however, the Vaccine Act provides compensation for the costs incurred by or on behalf of the injured party due to the vaccine-related injury, including "diagnosis and medical or other remedial care determined to be reasonably necessary, ... rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." 42 U.S.C. Sec. 300aa-15(a)(1)(iii)(I) and (II). All of these injuries are those of the child, whether costs are actually incurred by the child or by someone else on behalf of the child
 By contrast, where a statutory survivor, as opposed to the estate, recovers compensation under the Arizona Wrongful Death Act, the types of injuries compensated for are limited to injuries of the survivors themselves. See Ariz.Rev.Stat. Sec. 12-613; Huebner v. Deuchle, 109 Ariz. 549, 550, 514 P.2d 470, 471 (1973) (survivors maintain a separate action for recovery apart from any action formerly assertable by the deceased). These injuries are typically loss of consortium and other emotional losses of the survivor and loss of future financial support to the survivor. See Katz v. Filandro, 153 Ariz. 601, 739 P.2d 822 (Ariz.App.1987) (damages for loss of support were limited to the amount that the deceased's mother could have received from decedent during the two years between the decedent's death and the mother's own death); Sedillo v. City of Flagstaff, 153 Ariz. 478, 737 P.2d 1377 (Ariz.App.1987) (damages allowed included compensation for loss of companionship, comfort and guidance).
 Therefore, in this case, there was clearly no overlap which would preclude the petition, because the injuries compensated in each case were entirely distinct.