573 P.2d 518

Gary Hal SHANER, surviving spouse of Leesa J. Shaner, Deceased, Appellant,

v.

TUCSON AIRPORT AUTHORITY, INC., Transworld Airlines, Inc., Don's Auto Parks, Inc., Arizona Auto Parks, a co-partnership, and Don Jones, a partner thereof, Appellees.

No. 2 CA–CIV 2561.

Court of Appeals of Arizona, Division 2.

Nov. 1, 1977.

Rehearing Denied Dec. 5, 1977.

Review Denied Jan. 10, 1978.

Price, Tinney, Lindberg & Gianas by John E. Lindberg and John Price, Tucson, for appellant.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Michael A. Lacagnina and John A. Robertson, Tucson, for appellee Tucson Airport Authority, Inc.

Everett, Bury & Moeller, P. C. by David C. Bury and Dan A. Sinema, Tucson, for appellees Arizona Auto Parks, Don Jones & Don's Auto Parks, Inc.

May, Dees & Barassi by C. Robert Pursley, Tucson, for appellee Transworld Airlines.

OPINION

HOWARD, Chief Judge.

This is an appeal from a judgment entered on a directed verdict in favor of the appellees (defendants below). No evidence was presented at the trial. The motion for a directed verdict followed the opening statement of counsel for the plaintiff. The trial court gave counsel the opportunity to supplement the opening statement and he did so. The granting of a defense motion for directed verdict following a plaintiff's opening statement has been approved when it is apparent that the plaintiff cannot present sufficient evidence to sustain a verdict in his favor. *Slade v. City of Phoenix*, 112 Ariz. 298, 541 P.2d 550 (1975); *Scarborough v. Central L. & P. Co.*, 58 Ariz. 51, 117 P.2d 487 (1941); *Trollope v. Koerner*, 106 Ariz. 10, 470 P.2d 91 (1970). In granting such a motion the trial court must assume that the plaintiff can prove to the satisfaction of the jury every material fact set forth in his opening statement. *Scarborough v. Central L. & P. Co.*, supra. In making this assumption, the facts advanced by the plaintiff must be viewed in the light most favorable to his position. *Trollope v. Koerner*, supra. To sustain a verdict for the defendant based on a legal insufficiency of plaintiff's opening statement, it must be clear, after resolving all doubt in plaintiff's favor, that no claim for relief under the pleading can be established. *Slade v. City of Phoenix*, supra, *Trollope v. Koerner*, supra.

In the light of the foregoing standard and the allegations of fact made in plaintiff's opening and supplemental statements, the evidence would have shown that Gary Hal Shaner is the surviving husband of the decedent, Leesa Jo Shaner. Leesa Shaner resided with her husband in Okinawa, where he was stationed in the Air Force. In approximately March, 1973, Mrs. Shaner returned to Tucson to give birth to her second child. While in Tucson, she resided with her father, James A. Miller, who is an experienced and well-respected FBI agent. In the early evening of May 29, 1973, Mrs. Shaner received a telephone call from her

husband who was calling from San Francisco to advise her that he would arrive in Tucson that evening on a TWA flight that arrived at 10:15 p. m. Leesa was literally "walking on air", and was so excited over her husband's arrival that she could not wrap a gift she had purchased for him. Her father suggested that someone go with her to the airport, but Leesa wanted to meet her husband alone and then return home where the family was preparing a welcome home party. Leesa and Gary were going to live in a suburb of Portland, Oregon, Gary's home, and it was planned that Gary would go back and complete his college education and Leesa would work to help support the family.

Leesa left home at approximately 9:30 p. m. to drive to the airport to meet her husband. She was driving her father's car, a 1972 American Motors Javelin. The drive to the airport would take approximately 25 minutes. Mr. Shaner's flight arrived at 10:27 p. m. but Mrs. Shaner was not there to meet him. Mr. Shaner called his wife's father who thereupon drove to the airport. Mr. Miller arrived at the airport at approximately 11:00 p. m. and after conducting a search of the terminal, located the Javelin in the airport parking lot at 11:30 p. m. Mrs. Shaner's purse was in the back seat. The left side window was rolled halfway down and the door was unlocked. The right door was locked. There were no signs of a struggle or assault and nothing looked unusual. The car keys were missing and the parking ticket which one receives from the dispensing machine through the left window was also missing. Leesa's father had trained her never to resist deadly force, but to "fight like hell" when deadly force was not present.

The parking lot was dimly lit, and to see inside a car required a flashlight. The Airport Authority employed a security police force, and had for some time undertaken to provide security at the airport premises, including the parking lot. There was no standard operating procedure as to how security would be conducted in the parking lot. No security man was stationed in the parking lot at night and the security personnel checked the lot only if they had to come to the lot to help start a patron's car. If they were driving by on the perimeter road, they would look into the lot. Security personnel, when they had the time would also look out on the lot from the second floor of the airport terminal. The parking ticket stub had a warning to lock cars, as the parking lot operator would not be responsible for anything stolen from the parked vehicles.

The parking lot could be entered by persons on foot from the perimeter road, since it was fenced only with a type of rail fence running about 30 inches above the ground all around its perimeter.

There were no eyewitnesses who saw Leesa that night either at the parking lot or in the terminal. No known eyewitnesses saw her after she left her home to meet her husband. No trace was found of Leesa until late August of 1973, when her partially buried remains were discovered in a shallow grave near Ft. Huachuca, Arizona.

The FBI located the parking tickets relevant to the night in question. They disclosed that a parking ticket dispensed within a ten-minute period of the approximate time that Leesa Shaner should have arrived at the parking lot was missing. The ticket that was dispensed after the missing ticket, was stamped in and out within a one-minute period of time.

A female airport employee reported that on May 21, at approximately 1:00 a. m., she approached her vehicle in the employee's parking lot, and as she was getting into the vehicle a man attempted to detain her. As she tried to close the car door the man grabbed the door handle in an effort to hold the door open. The employee immediately drove off. She had never seen the person before or since at the terminal.

The plaintiff intended to call Professor Leo Hertoghe as an expert on security. He would have testified that the security provided at the airport parking lot was not sufficient under the circumstances existing on the night of Leesa Shaner's disappear-

ance and that lack of security was a cause of Leesa's abduction from the parking lot.

The FBI, with the assistance of the Tucson Police Department crime lab, checked the decedent's vehicle carefully for fingerprints. The vehicle had been thoroughly cleaned and washed a day or two before Leesa's disappearance and there were no unknown fingerprints located in the interior of the vehicle. Two unidentifiable fingerprints were located on the exterior of the vehicle, one being on the hood and one being a partial print that overlayed Leesa's thumbprint adjacent to the door handle on the driver's side.

Appellee Arizona Auto Parks paid for both the original construction and the remodeling of the parking lot facility. When lights in the parking lot burned out, Arizona Auto Parks had a duty to replace them.

■ Appellant's theory of negligence was based upon premises liability and on the status of Leesa Shaner as an invitee, thus imposing upon appellees a duty to have the premises in reasonably safe condition and to give warning of latent or concealed perils. *Heth v. Del Webb's Highway Inn*, 102 Ariz. 330, 429 P.2d 442 (1967). Since it was appellant's theory below that Leesa was abducted in the parking lot, it is clear that the trial court was correct in directing a verdict in favor of Trans World Airlines. Appellant did not offer to show that, as to the parking lot, TWA owned, occupied or managed it, or had any right of control over it. The lack of such circumstances precludes liability. *Marshall v. United Airlines*, 35 Cal.App.3d 84, 110 Cal.Rptr. 416 (1973)

As for the other appellees, the basis for their motions for directed verdict was appellant's inability to prove their negligence without resorting to the impermissible use of an "inference upon inference". Appellee Tucson Airport Authority also argues here that, in any event, the trial court was correct in directing a verdict in its favor since the acts of Leesa's abductor or abductors constituted a superseding intervening cause

which would insulate it from liability. Since we believe appellant failed in his evidentiary showing, we need not address the question of the appellees' liability for the failure to protect another person from a criminal act, but merely refer the reader to the annotation in 10 A.L.R.3d 619 and to the following cases: *Atamian v. Supermarkets General Corporation*, 146 N.J.Super. 149, 369 A.2d 38 (1976); *Slapin v. Los Angeles International Airport*, 65 Cal.App.3d 484, 135 Cal.Rptr. 296 (1976); *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976).

■ The determinative issue in this case is not whether appellant's proof rested upon impermissible successive inferences, but rather could appellant have proven causation in fact. In this respect we shall assume that Leesa was in fact abducted from the airport parking lot. As we stated in *Purcell v. Zimbelman*, 18 Ariz.App. 75, 500 P.2d 335 (1972):

"An essential element of the plaintiff's cause of action for negligence is that there must be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. On the issue of the fact of causation the plaintiff has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. This 'substantial factor' test has been applied by our Supreme Court in determining whether or not there was causation in fact. *McDowell v. Davis*, 104 Ariz. 69, 448 P.2d 869 (1969); and see *Herzberg v. White*, 49 Ariz. 313, 66 P.2d 253 (1931). Although a mere possibility of such causation is not enough, the plaintiff is not required to prove his case beyond a reasonable doubt and he need not negate entirely the possibility that defendant's conduct was not a cause. *Cornbrooks v. Terminal Barber Shops*, 282 N.Y. 217, 26 N.E.2d 25 (1940). All that is required in negligence cases is

**448**

for the plaintiff to present probable facts from which negligence and causal relations may be reasonably inferred. *E. L. Jones Constr. Co. v. Noland,* 105 Ariz. 446, 466 P.2d 740 (1970)."

We believe appellant's evidence shows at most, a *possibility* that the inadequate lighting and security was a substantial factor in bringing about Leesa's abduction, but does not rise to the level of a reasonable probability. Since there is no evidence of what happened in the parking lot, the jury would be left to sheer speculation on the issue of causation. To hold otherwise in this case would make appellees insurers of the safety of Leesa which would be an impermissible imposition of liability.

■ Appellant contends that Professor Hertoghe would have provided the necessary evidence of causation. We do not agree. The professor's opinion that inadequate lighting and security caused Leesa's kidnapping and death would have been inadmissible for two reasons. First, his opinion rested upon the same bed of quicksand—sheer speculation. Second, his opinion was not the proper subject of expert testimony since it required no special knowledge, was of no aid to the jury and would have invaded its province. See *Rempfer v. Deerfield Packing Corp.,* 4 N.J. 135, 72 A.2d 204 (1950).

Affirmed.

HATHAWAY and RICHMOND, JJ., concurring.