739 P.2d 822

**Karyn KATZ, Personal Representative of the Estate of Bobbi Sacklow, deceased, Plaintiff/Appellant/Cross-Appellee,**

v.

**Frank J. FILANDRO, Administrator of the Estate of Mary Filandro, deceased, Defendant/Appellee/Cross-Appellant.**

No. 2 CA–CV 87–0011.

Court of Appeals of Arizona, Division 2, Department B.

April 16, 1987.

Langerman, Begam, Lewis and Marks by Amy G. Langerman, Phoenix, for plaintiff/appellant/cross-appellee.

Shannon & Cronin by Robert S. Cronin, Jr., Phoenix, for defendant/appellee/cross-appellant.

## OPINION

LACAGNINA, Judge.

On September 17, 1981, Elinor Joan Sacklow, age 47, and Mary Filandro were killed as the result of a one-vehicle rollover accident. On September 15, 1983, Bobbi Sacklow, Elinor's mother, age 73, brought an action against Frank Filandro, the administrator of Mary Filandro's estate, for wrongful death alleging as follows:

> As a direct and proximate result of the death of ELINOR JOAN SACKLOW, BOBBI SACKLOW, mother of the deceased, has been deprived of the love, affection, comfort, care, protection and financial support she would have received from her daughter, had she lived;
>
> . . . .

She also alleged special damages in the form of medical and funeral expenses as a result of Elinor's death. Although Bobbi brought the action only as the surviving mother of Elinor, it was later learned she was also executrix of Elinor's estate.

Bobbi died five days after the complaint was filed. On December 21, 1984, Bobbi's attorney filed a motion for substitution of party plaintiff, stating she had just learned of Bobbi's death, and requested the court to substitute "Karyn Katz[1] as personal representative for Bobbi Sacklow's estate for the death of Elinor Joan Sacklow." Filandro noticed a hearing on the motion, did not oppose the motion, and on February 6, 1985, the trial court granted the motion.

On December 12, 1985, four days prior to trial, Filandro filed a motion in limine to limit Katz's damages to the loss of support suffered by Bobbi up to the date of her death, thereby excluding any damages for Elinor's lost earning capacity or pension benefits. On December 16, 1985, the day of trial, Katz's attorney sought to amend her pleadings pursuant to Rule 15(b), Ariz. R.Civ.P., 16 A.R.S., to include the estate of Elinor Sacklow as a party plaintiff to the action. Filandro objected, arguing prejudice and surprise, and claimed that Katz was attempting to argue a new cause of action now barred by the statute of limitations under A.R.S. § 12–542.

While the trial judge agreed that Karyn Katz as personal representative for the estate of Bobbi Sacklow was the proper person to bring the action, he denied the motion to amend and precluded evidence of damages beyond the two-year period from Elinor's death to Bobbi's death. The jury considered the economic support and maintenance Elinor would have provided to her mother during that two-year period plus the stipulated amount for funeral expenses ($2,176.16). The jury awarded the estate $45,576. Katz filed a motion for new trial on damages only limited to the time period following Bobbi's death. This motion was denied.

Katz argues that the existence of a statutory beneficiary at the time of the filing of a wrongful death action does not preclude a claim for damages to the estate of the decedent under A.R.S. §§ 12–612 and 14–3110. Filandro argues that there was no evidence to support a claim for damages by the estate of Elinor Sacklow (except for stipulated funeral expenses). He also cross-appeals claiming the court gave an

---

1. Karyn Katz is Elinor's sister and Bobbi's    daughter.

improper instruction on speed pursuant to A.R.S. § 28–701(B)(3). He argues the wrongful death statute does not allow a cause of action brought in the name of the personal representative of the estate of a deceased statutory beneficiary. Finally, he argues that the motion for new trial on damages sustained by Elinor's estate after Bobbi's death was improper under Rule 59(h), Ariz.R.Civ.P., 16 A.R.S., as calling for piecemeal litigation.

We disagree with the arguments raised by both parties and affirm the trial court because we find as follows:

1. Bobbi survived Elinor within the meaning of the wrongful death statute, and therefore,

2. The estate of Elinor Joan Sacklow is not a statutory beneficiary within the meaning of the statute;

3. Bobbi's claim for loss of economic support survived her death [2]; and

4. Her damages are limited to those which had accrued at the time of her death.

## I

### BOBBI SACKLOW AS A SURVIVOR

In responding to Katz's motion to amend the pleadings to conform to the evidence, specifically alleging that the estate of Elinor Sacklow was a proper party and that the estate's measure of damages was the proper measure of damages, the court denied the motion stating in part as follows:

With respect to the motion to amend the Complaint to conform to evidence in reading the statute 12–612, the word "survivor" as it is used in this means a person who survives the decedent, that is, the person who died as a result of the wrongful act of another and, in this case, the person who survived was the mother. She brought the action and she was the only one under our statute, I believe, who was entitled to bring that action.

We agree with the trial court that Bobbi survived Elinor within the meaning of the statute. The present wrongful death statute reads in pertinent part as follows:

§ 12–612. Parties plaintiff; recovery; distribution

A. An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.

B. Either parent may maintain the action for death of a child, and the guardian for death of his ward.

C. The amount recovered in an action for wrongful death shall be distributed to the parties provided for in subsection A in proportion to their damages, and if recovery is on behalf of the decedent's estate the amount shall be an asset of the estate.

Black's Law Dictionary defines survivor as "one who survives another; one who outlives another; one who lives beyond some happening; one of two or more persons who lives after the death of the other or others." Black's Law Dictionary at 1279 (4th ed. 1979). In this case the "happening" after which Bobbi lived was the wrongful death of Elinor. The two-year survival time is also significant. This is not a case of splitting hairs because of the temporal proximity of the deaths. *See, e.g., Pedroli v. Missouri Pac. Ry.,* 524 S.W.2d 882 (Mo.App.1975) (beneficiary survived for 16 days); *In re Dillman's Estate,* 8 Ill.App.2d 239, 131 N.E.2d 634 (1956) (husband survived wife for a few hours).

The Arizona Supreme Court has previously focused on the time of the wrongful death as the time when survivors/statutory beneficiaries are determined. In *Hurt v. Superior Court,* 124 Ariz. 45, 601 P.2d 1329 (1979), the court held that a posthumously born child of the decedent was included within the term "children" for

**2.** Katz concedes Bobbi's claim for loss of consortium and pain and suffering abated at her death.

whose benefit a wrongful death action may be brought. In its holding, the court found that because the child was conceived before the time of death, even though born after, it was a beneficiary within the meaning of the statute.

## II

### ELINOR'S ESTATE IS NOT A STATUTORY BENEFICIARY

It is well settled that a right of action for wrongful death is purely statutory. *Gibson v. Boyle*, 139 Ariz. 512, 679 P.2d 535 (App.1983). The action must be brought in the names of the persons to whom the right was given by statute. *Solomon v. Harman*, 107 Ariz. 426, 489 P.2d 236 (1971), citing *Barragan v. Superior Court*, 12 Ariz.App. 200, 469 P.2d 92, modified on other grounds, 12 Ariz.App. 402, 470 P.2d 722 (1970). In *Summerfield v. Superior Court of Maricopa County*, 144 Ariz. 467, 476, 698 P.2d 712, 721 (1985), the supreme court stated the legislative intent to allow full recovery for survivors:

> In enacting the wrongful death statute of 1887, and in returning to its terms under the present statute, the legislature explicitly recognized the legal right of the *survivors* to be compensated for *their loss* resulting from the victim's death.

(Emphasis in original). The supreme court had previously held, in the case where there were survivors and the question was the authority of the personal representative to compromise the wrongful death claim, that a wrongful death claim of a surviving widow and children was not a claim made by the estate. *See In re Estate of Milliman*, 101 Ariz. 54, 61, 415 P.2d 877, 884 (1966). In *Solomon v. Harman, supra*, the supreme court distinguished the proper party plaintiff from the right to be a beneficiary and concluded that after the 1956 amendment, the estate is a beneficiary "only if none of those named beneficiaries survive." 107 Ariz. at 430, 489 P.2d at 240 (1971).

We have also held, in discussing distribution of damages following the 1956 statutory amendment (that damages to survivors be distributed according to the laws of intestacy), that this manner of distribution controls "only when the action is brought for the benefit of the estate, *that is, when there is no surviving spouse, parent or child.*" *Salinas v. Kahn*, 2 Ariz.App. 181, 194, 407 P.2d 120, 133, modified, 2 Ariz.App. 348, 409 P.2d 64 (1965) (emphasis added). It is thus clear that the estate of the decedent is a beneficiary only if no specifically named beneficiary "survives" within the meaning of the statute.

This is also not a situation where the primary beneficiary dies and the question arises as to the effect of that death on a different class of beneficiaries. In this case, at the time of Elinor's death, there was a statutory survivor, which precluded any claim by Elinor's estate. *See Solomon v. Harman, supra,* (when the statute called for distribution of damages according to intestate succession) where the court stated:

> It is clear that the legislature intended that as long as there existed a surviving spouse, child or parent, then brothers, sisters, cousins, aunts, uncles, grandparents, and others should not recover any amount or to have their loss be a measure of the damages for the wrongful death. * * *

> "[T]he persons for whose benefit the action may be maintained are divided into classes based upon their natural dependence on the deceased. The right of action inures for the benefit of the first preferred class * * *, and *if there are none,* then for the benefit of the class next in line of preference. * * * The wife, husband, parents and children of the deceased are sometimes grouped in the first class and the heirs at law or distributees of the decedent in the second class."

107 Ariz. at 430–431, 489 P.2d at 240–241 (citations omitted; emphasis in original). The fact that Bobbi died during the pendency of the litigation does not revive any claim Elinor's estate would have had if there had been no survivors upon Elinor's death.

██ Katz's reliance on *Arizona Binghampton C. Company v. Dickson*, 22 Ariz. 163, 195 P. 538 (1921), *De Amado v. Friedman*, 11 Ariz. 56, 89 P. 588 (1907), and *Southern Pacific v. Wilson*, 10 Ariz. 162, 85 P. 401 (1906), is misplaced. At the time those cases were decided, the wrongful death statute only allowed an action by the personal representative for the benefit of the estate, recovery to become an asset of the estate; therefore, any reliance on the measure of damages mentioned in those cases as including future earnings of the decedent was a result of the estate's being the only allowable statutory beneficiary at that time. This is no longer the statutory measure of damages when there are survivors.

## III

### BOBBI'S CLAIM FOR LOSS OF ECONOMIC SUPPORT SURVIVED HER DEATH

██ Arizona's survival statute, A.R.S. § 14–3110, provides as follows:

Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such person shall not be allowed.

The effect on a statutory beneficiary's claim under the wrongful death statute, once that beneficiary dies, has been addressed in many jurisdictions but not uniformly decided. Prosser and Keeton discuss this situation:

If the sole beneficiary, or all of the beneficiaries, die after the decease of the person wrongfully killed, but before action is begun, or even after commencement of the action but before judgment, there is authority to the effect that the action does not survive to the beneficiary's estate. Probably the prevailing view is that the cause of action vests in the beneficiary immediately upon the wrongful death, becomes his property, and survives to his representative.

W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts 948 (5th ed. 1984) (footnotes omitted) ("Prosser"). There is support for this view in Arizona, where the courts have focused on the time of the wrongful death in determining the existence of beneficiaries, and not the time the action is brought or the time of trial. Professor Dobbs in his Handbook on the Law of Remedies (1973) ("Dobbs") states as follows:

Courts are divided on the question whether there is any action at all for the decedent's death where the sole beneficiary dies. Some allow a recovery by the beneficiary's estate, some deny recovery altogether where the beneficiary has himself died, and some permit or deny recovery depending on whether suit was brought before or after the beneficiary's death.

Dobbs, *supra*, at 569 (footnotes omitted). We hold that Bobbi's claim for loss of economic support survived her death for two reasons. First, it is not a claim specifically excluded under the terms of the survival statute. Second, we agree with the jurisdictions that have determined that the cause of action vests in the plaintiff/beneficiary immediately upon the wrongful death, becomes a property right in the beneficiary and survives to his representative.[3]

---

3. *See, e.g., Freeman Decorating Co. v. Subsequent Injury Trust Fund*, 175 Ga.App. 369, 333 S.E.2d 204 (1985) (widow is a "dependent," entitled to receive benefits, even though she died 43 days after husband); *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973) (death of dependent distributee during pendency of action only limits the measure of damages to the loss from the death of injured party to time of his death); *McDaniel v. Bullard*, 34 Ill.2d 487, 216 N.E.2d 140 (1966) ("personal property" as used in statute includes a cause of action on behalf of next of kin to recover for loss of support); *Parker v. National Zinc Co.*, 406 P.2d 493 (Okla. 1965) (right to benefits in workers' compensation claim vested in widow upon his death); *Gray v. Goodson*, 61 Wash.2d 319, 378 P.2d 413 (1963) (cause of action accrues, beneficiary vested at decedent's death).

Once the cause of action has accrued, it is not extinguished by the death of a specific named beneficiary.[4] "The object of the revival statute and the wrongful death statute was to give and preserve to parties damaged a complete recovery and opportunity to recover complete loss sustained because of wrongful injury and death." *Holmes v. City of New York*, 269 A.D. 95, 54 N.Y.S.2d 289 (1945).

## IV

### DAMAGES ARE LIMITED TO THOSE WHICH HAD ACCRUED AT THE TIME OF BOBBI'S DEATH

■ The trial court in this case instructed the jury to consider the following as an element of damages: "The reasonable value of the economic support and maintenance that Elinor Sacklow would have provided to Bobbi Sacklow from September 17, 1981, to September 20, 1983." We affirm the trial court's limitation of damages to the two-year period. Dobbs states the situation as it affects damages:

A number of events after the death of the decedent might occur to minimize losses of the beneficiaries. For instance, his spouse might remarry, or his child might be adopted, or the survivors themselves might die. These things could hardly be significant under a loss-to-the estate measure of damages, since that measure focuses on the decedent's lost earnings or accumulations without reference to survivors. However, where the loss-to-survivors measure is used, it is at least arguable that subsequent events that cut the survivor's real losses should be considered in assessing death damages.

Dobbs, *supra*, at 568. There seems to be agreement among the jurisdictions that the measure of damages in such a situation is limited. As Prosser states, "[w]here the wrongful death action is permitted to survive the death of the beneficiary and is vested in his estate, damages are usually limited to those accrued up to the benefi-

ciary's death." Prosser, *supra*, at 949 (footnote omitted). Dobbs agrees:

[E]ven if the action for the wrongful death is not abated by the death of the only beneficiaries, there is good agreement that the actual pecuniary loss to the beneficiary is the limit of recovery, and this means the pecuniary loss from the decedent's death to the beneficiaries [sic] death only. Thus death of a beneficiary is a controlling event in determining damages.

Dobbs, *supra*, at 569 (footnote omitted).

■ The wrongful death statute allows for distribution of any amount recovered to the statutory beneficiaries "in proportion to their damages." A.R.S. § 12–612(C). The jury must specifically find the amount of damages sustained by each beneficiary. *Nunez v. Nunez*, 25 Ariz.App. 558, 545 P.2d 69 (1976). In assessing damages owing to Bobbi for the death of her daughter, in this case the jury properly considered Bobbi's death as a subsequent event which minimized her real loss. *See generally*, Dobbs, *supra*.

Division One of this court recently addressed the question of damages in a wrongful death action with multiple beneficiaries where one beneficiary died before trial. Although the case was not, decided on that basis, it is interesting to note Judge Jacobson's dissent where he indicates with respect to one of the statutory beneficiaries who received zero damages: "The jury could properly consider that Timothy was dead at the time of trial." *Sedillo v. City of Flagstaff*, 153 Ariz. 478, 485, 737 P.2d 1377, 1384 (1987). In this case, the jury heard expert testimony from both sides concerning various amounts of damages in addition to the stipulated amount of funeral and burial expenses. The jury considered what loss of maintenance Bobbi had accrued during the two-year period between Elinor's death and her own and awarded an amount justified by the evidence to reflect that loss. We affirm that jury award and judgment.

4. *Stutz v. Guardian Cab Corp.*, 273 A.D. 4, 74 N.Y.S.2d 818 (1947); *Greco v. S.S. Kresge Co.*, 277 N.Y. 26, 12 N.E.2d 557 (1938).

In view of our decision, we necessarily reject Filandro's arguments concerning damages and the proper statutory plaintiff/beneficiary. His argument concerning the court's instruction given pursuant to A.R.S. § 28–701(B)(3) is also without merit. The court's instruction tracked the statutory language, and in light of the undisputed evidence concerning the road conditions and the estimated speed of the vehicle, we find no error in the court's instruction.

Affirmed.

HATHAWAY, C.J., and LIVERMORE, P.J., concur.