930 P.2d 485

**Carlos MARTINEZ, Plaintiff/Appellant,**

v.

**WOODMAR IV CONDOMINIUMS HOMEOWNERS ASSOCIATION, INC., an Arizona non-profit corporation, Defendant/Appellee.**

No. 2 CA–CV 96–0102.

Court of Appeals of Arizona, Division 2, Department A.

July 11, 1996.

Review Denied in Part and Granted in Part Jan. 14, 1997.

Fred J. Pain, Jr. and John Greg Pain, Scottsdale, for Plaintiff/Appellant.

Goldstein & McGroder, Ltd. by Philip T. Goldstein and Patrick J. McGroder, III, Phoenix, for Defendant/Appellee.

## OPINION

PELANDER, Presiding Judge.

The primary issue in this case is whether a condominium homeowners association has a duty to protect a social guest/licensee who, while visiting a resident of the condominium complex, is criminally assaulted in a common area of the complex. Concluding that no such duty existed, the trial court granted summary judgment for defendant/appellee Woodmar IV Condominiums Homeowners Association, Inc. (Woodmar). We affirm.

Woodmar owns and maintains the common areas, including parking lots, of a Phoenix condominium complex consisting of approximately 152 units. While attending the graduation party of a friend who resided at the complex, plaintiff/appellant Carlos Martinez, without provocation, was shot by an unidentified assailant in a common area parking lot. Plaintiff sued Woodmar, alleging that it negligently failed to provide adequate security for the complex. The trial court granted summary judgment for Woodmar, concluding that it owed no duty to protect plaintiff, a social guest/licensee, from a third person's criminal acts, and that plaintiff presented no facts to establish a breach of Woodmar's duty to warn him of any hidden perils on the property. This appeal followed.

■ Plaintiff first contends that Woodmar had a duty to protect him from criminal assault because it acted as a landlord over the complex common areas, and that such duty extends beyond tenants to licensees. We disagree. As our supreme court has stated:

The question of duty is decided by the court. The question is whether the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff. If the answer is no, the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.

*Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

■ Arizona has adopted the rule set forth in the Restatement (Second) of Torts § 315 (1965), which provides as follows:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

*See Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (App.1989). Similarly, Division One of this court has noted:

A firmly rooted distinction still exists in the law of negligence "between 'misfeasance' and 'nonfeasance'—that is to say, between active misconduct working positive injury to others and passive inaction or a failure to take steps to protect them from harm." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed.1984). "Liability for 'misfeasance,' then, may extend to any person to whom harm may reasonably be anticipated as a result of the defendant's conduct, or perhaps even beyond; while for 'nonfeasance' it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act." *Id.* at 374 (footnote omitted).

*Bogue v. Better–Bilt Aluminum Co.*, 179 Ariz. 22, 34, 875 P.2d 1327, 1339 (App.1994).

■ For Woodmar to have been required to protect plaintiff, "a special relationship had to exist between them. .; such as carrier-passenger, innkeeper-guest, landlord-invitee, guardian-ward, teacher-student, or jailer-prisoner." *Fedie*, 162 Ariz. at 265, 782 P.2d at 741. In this case, no "special relation" existed between Woodmar and either plaintiff or the assailant, who was one of a group of youths hanging around the complex parking lot.

Plaintiff acknowledges that he was a social guest/licensee when he was assaulted while visiting the complex. As such, he did not have the type of special relationship with Woodmar which would impose on it a duty to protect him from harm caused by third parties. *See, e.g., Parish v. Truman*, 124 Ariz.

228, 603 P.2d 120 (App.1979) (apartment tenant had no duty to protect guest from criminal assault by third parties whom tenant allowed to enter the apartment). *See also-Totten v. More Oakland Residential Housing, Inc.*, 63 Cal.App.3d 538, 134 Cal.Rptr. 29 (1976); *King v. Ilikai Properties, Inc.*, 2 Haw.App. 359, 632 P.2d 657 (1981). Assuming without deciding that Woodmar acted like a landlord in controlling the complex common areas, it might have had some duty to protect an owner of a condominium unit or the owner's tenant. *See, e.g., Frances T. v. Village Green Owners Ass'n*, 42 Cal.3d 490, 229 Cal. Rptr. 456, 723 P.2d 573 (1986); *Kwaitkowski v. Superior Trading Co.*, 123 Cal.App.3d 324, 176 Cal.Rptr. 494 (1981); *O'Hara v. Western Seven Trees Corp. Intercoast Management*, 75 Cal.App.3d 798, 142 Cal.Rptr. 487 (1977). We have neither found nor been cited to any authority, however, extending any such duty to a social guest/licensee such as plaintiff.[1]

Given plaintiff's legal status, Woodmar only owed a duty to "refrain from knowingly letting him run upon a hidden peril or wantonly or wilfully causing him harm." *Parish*, 124 Ariz. at 230, 603 P.2d at 122, *citing Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967). Plaintiff's second contention, that he presented triable issues of fact as to whether Woodmar breached that duty, is also without merit. Although Woodmar was well aware of criminal activity at and around the complex, so too was plaintiff. Plaintiff presented no evidence that Woodmar was specifically aware of the group of youths in the complex parking lot when plaintiff was shot, or that that group was armed or dangerous. In any event, the group can hardly be characterized as a "hidden peril" or "concealed danger." *Cf. Downey v. Lackey*, 11 Ariz.App. 528, 530, 466 P.2d 401, 403 (1970). The trial court correctly concluded that there were no genuine issues of material fact as to whether Woodmar breached its duty to warn plaintiff of hidden perils.

*Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 789 P.2d 1040 (1990), and *Dolezal v. Carbrey*, 161 Ariz. 365, 778 P.2d 1261 (App.1989), which plaintiff relies on, are inapposite. In *Robertson*, our supreme court concluded that the victim, an independent contractor/security guard, was a business invitee on the motel's premises, and that the motel had a duty to warn him of a danger (an armed robber on the premises) of which it knew or should have known and of which the invitee was unaware and unlikely to discover. *Robertson*, 163 Ariz. at 544, 789 P.2d at 1045. Unlike the victim/invitee in *Robertson*, plaintiff was a social guest.

The court in *Dolezal*, relying on Restatement § 360, held that a horse stable owner had a duty to "exercise reasonable care to discover conditions that posed an unreasonable risk of harm to [a guest/horseback rider] and to make such conditions safe." *Dolezal*, 161 Ariz. at 371, 778 P.2d at 1267. The dangerous, fixed condition on the property in *Dolezal*, a low metal overhang extending from a line of horse stalls, clearly is distinguishable from the transient harm created by third persons who commit crimes on particular property.

Plaintiff's reliance on Restatement § 302B also is misplaced. That section provides that "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." It generally applies, however, "where the actor is under a special responsibility toward the one who suffers the harm," or "where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct." Restatement § 302B, Comment e. Woodmar did not assume a duty to protect plaintiff, create or encourage his contact with the group in the parking lot, or act in any other way so as to justify imposing on Wood-

---

**1.** Citing only Judge Fidel's concurring opinion in *Shaw v. Petersen*, 169 Ariz. 559, 563–67, 821 P.2d 220, 224–28 (App.1991), plaintiff urges this court to abandon the distinction between invitees and social guests/licensees. Any such change in the

law, however, is best left to our supreme court or the legislature. *See McKay v. Industrial Commission*, 103 Ariz. 191, 192–93, 438 P.2d 757, 758–59 (1968).

mar a duty to protect plaintiff under the circumstances of this case.

Affirmed.

LIVERMORE, J., and ARES, J. Pro Tem., concur.