963 P.2d 271

William KNAUSS, surviving parent of Ellen Marie Knauss, Plaintiff/Appellant/ Cross–Appellee,

v.

DND NEFFSON COMPANY, a sole proprietorship; Oracle–Wetmore Company, a sole proprietorship; and Forest City Enterprises, Inc., an Ohio corporation, Defendants/Appellees/Cross–Appellants,

and

Walden Book Company, a New York corporation, Defendants/Appellees.

No. 2 CA–CV 97–0047.

Court of Appeals of Arizona, Division 2, Department B.

Nov. 6, 1997.

Review Denied Sept. 24, 1998.

Gabroy, Rollman & Bossé, P.C. by John Gabroy and Richard Brown, Tucson, for Plaintiff/Appellant/Cross–Appellee.

Bury, Moeller, Humphrey & O'Meara by Gerald R. O'Meara and Roger W. Frazier, Tucson, for Defendants/Appellees/Cross–Appellants DND Neffson Company, Oracle–Wetmore Company, and Forest City Enterprises, Inc.

DeConcini McDonald Yetwin & Lacy, P.C. by Wayne E. Yehling, Tucson, for Defendant/Appellee Walden Book Company.

PELANDER, Presiding Judge.

This wrongful death action arose from the after-hours abduction of decedent, Ellen Marie Knauss, from a shopping mall parking lot and her ensuing rape and murder. Decedent's surviving parent, plaintiff/appellant William Knauss, sued defendants/appellees DND Neffson Company, Oracle–Wetmore Company, and Forest City Enterprises, Inc., owners/operators of the Tucson Mall (the mall defendants), alleging they breached their common law duty to protect or warn invitees against foreseeable criminal acts of third parties on mall property, causing his daughter's death. Plaintiff also sued Walden Book Company, a mall tenant, alleging it breached a voluntarily assumed duty to inform mall management that decedent and others would be working after hours so that the mall could make appropriate security arrangements.

The trial court granted summary judgment for Walden and partial summary judgment for the mall defendants, concluding they owed no common law duty to decedent. Plaintiff challenges those rulings in this appeal. In their cross-appeal, the mall defendants contend the trial court should have dismissed the action because the personal

representative of decedent's estate, rather than decedent's father, is the only proper plaintiff under A.R.S. § 12–612. We reject that contention, affirm the judgment for Walden, and reverse the partial summary judgment for the mall defendants because it is incompatible with our supreme court's recent decision in *Martinez v. Woodmar IV Condominiums Homeowners Ass'n,* 189 Ariz. 206, 941 P.2d 218 (1997).

## FACTUAL AND PROCEDURAL BACKGROUND

We view the facts and reasonable inferences therefrom in the light most favorable to plaintiff. *Martinez.* Decedent, an employee of RGIS Inventory Specialists, was performing an inventory at Walden in the Tucson Mall on Sunday night, September 19, 1993. The mall had closed at 5:00 p.m. that day, and the mall's security personnel had left the premises at approximately 9:00 p.m. Walden's manager had made arrangements for RGIS to conduct the inventory and knew that its employees would be working that evening. Walden typically notified mall management to obtain permission for employees to work in the mall after hours. In keeping with that practice, Walden's manager believes she informed the mall that an inventory would be performed after closing time on September 19.

After finishing her work around 11:45 p.m., decedent walked to her car in the mall parking lot. Two young men, David Trostle and Jack Jewitt, Jr., accosted her, forced her into her car, and drove her to the desert, where she was sexually assaulted, shot in the head, and killed. Decedent's body was discovered on September 24, after Trostle and Jewitt had been arrested.[1]

In their motions for summary judgment, all defendants contended they owed decedent no duty. The mall defendants also argued that the criminal acts against her were unforeseeable. In opposition, plaintiff asserted, *inter alia,* that the mall defendants owed decedent a common law duty and that all defendants had voluntarily assumed a duty

towards her. He also requested additional time for discovery under Rule 56(f), Ariz. R. Civ. P., 16 A.R.S.

The trial court ruled that this court's opinion in *Martinez,* 187 Ariz. 408, 930 P.2d 485 (App.1996), which the supreme court later vacated, was "dispositive of the plaintiff's action on the issue of common law duty." The trial court later denied plaintiff's motion for reconsideration of that ruling, but granted his motion under Rule 56(f) "for purposes of determining the factual predicate existing in this case to determine whether the assumption of a duty to patrol the mall parking lot was reasonably exercised." The court entered judgment in favor of Walden, disposing of all claims against it, and entered partial summary judgment for the mall defendants under Rule 54(b), Ariz. R. Civ. P., "with regard to any common law duty owed to Plaintiff's decedent," "leaving only the issue of voluntary assumption of a duty to patrol the parking lots of the Tucson Mall for determination." This appeal and cross-appeal followed.

## DISCUSSION

On appeal from a summary judgment, we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *United Bank v. Allyn,* 167 Ariz. 191, 805 P.2d 1012 (App.1990). Summary judgment is inappropriate unless there are no genuine factual issues and the movant is entitled to judgment as a matter of law, Rule 56(c), or unless the facts supporting a plaintiff's claim "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

1. Summary Judgment for Mall Defendants

■ To support his negligence claim, plaintiff had to establish duty, breach of the standard of care (negligence), proximate

---

1. Trostle was convicted of kidnapping, first degree murder, and other crimes and was sentenced to death in May 1994. Jewitt later was

convicted of the same crimes and received a life sentence.

cause, and damages. *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 639 P.2d 330 (1982). "The threshold issue of whether the defendant owed any duty of care to the plaintiff is usually decided by the court as a matter of law," subject to our *de novo* review. *Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 30–31, 893 P.2d 26, 30–31 (App.1994). Defendants concede that decedent was a business invitee when she was victimized in the mall parking lot. *See Nicoletti.* As owners and operators of the mall with control over its parking lots, the mall defendants had "an affirmative duty to make the premises reasonably safe for use by invitees." *Tribe v. Shell Oil Co.,* 133 Ariz. 517, 519, 652 P.2d 1040, 1042 (1982). *See also Robertson v. Sixpence Inns of America,* 163 Ariz. 539, 789 P.2d 1040 (1990); *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985).

The mall defendants contend, however, that foreseeability is an essential element of duty. According to them, the criminal acts against decedent were unforeseeable as a matter of law because they occurred around midnight, more than six hours after the mall had closed, and because there is no evidence of prior, similar incidents or notice of imminent probability of harm to her. The mall defendants also assert that almost all prior reported criminal incidents on mall property occurred during, or shortly before or after, the mall's business hours, there was no actual or perceived need for round-the-clock security,[2] and their security office was not asked to investigate suspicious activity in or around the parking lot on the night in question. Therefore, they argue, the law should

not impose a duty on them to protect or warn against such unforeseeable events as Trostle's and Jewitt's crimes. Defendants' arguments, though somewhat persuasive, are inconsistent with the supreme court's discussion of foreseeability vis-à-vis duty in *Martinez.*

In that case, an unidentified third party shot the plaintiff/guest without provocation in a condominium complex parking lot while the plaintiff was attending a graduation party. The homeowners association was aware that a gang of young people often gathered in the parking lot to sell drugs and engage in other criminal conduct. The complex had hired a security guard to patrol the complex all night, starting at 8:00 or 9:00 p.m., but the shooting occurred an hour before the guard came on duty. The supreme court likened the homeowners association to a property owner or possessor of common areas and, relying on Restatement (Second) of Torts § 344 (1965)[3] and Restatement (Second) of Property § 17.3 (1976), concluded that it had a duty "to take reasonable measures to protect against foreseeable activities creating danger, including criminal attacks, on the land it controlled." 189 Ariz. at 212, 941 P.2d at 224.

On the question of foreseeability, the court in *Martinez* stated: "If one owes a duty of reasonable care to those on one's land with permission, then the circumstances will dictate what is reasonable to protect others from foreseeable and preventable danger. The category of danger neither creates nor eradicates duty; it only indicates what con-

2. According to the mall's security director, the mall originally had 24–hour per day security during construction and in the early stages after its opening. At some point, however, the mall "decided not to have an off-duty law enforcement officer on the midnight shift [because] there was not a perceived need for that," "[t]hey were guarding against incidents that didn't take place," and "[i]t was felt that the resources were better applied to the mall when it was open." From 1988 to 1995, the mall defendants used a private, independent firm and its own personnel for security, required security vehicles to patrol the parking lots at least hourly from 12:20 p.m. to 8:00 p.m., and also encouraged periodic foot patrol and observation of any loitering or suspicious persons.

3. Restatement (Second) of Torts § 344 (1965), which the supreme court found applicable in *Martinez,* provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
(a) discover that such acts are being done or are likely to be done, or
(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

duct may be reasonable to fulfill the duty." *Id.* at 210–11, 941 P.2d at 222–23. In other words, "[f]oreseeability of harm defines and limits the scope of conduct necessary to fulfill a land possessor's duty and is the cornerstone of the cases involving a possessor's duty to act reasonably to protect [persons] ... from criminal attacks." *Id.* Thus, the court found, "[t]he type of foreseeable danger [does] not dictate the existence of duty but only the nature and extent of the conduct necessary to fulfill the duty." *Id.*[4]

■ Under *Martinez*, we cannot sustain summary judgment for the mall defendants on the ground that they owed no duty of care to decedent. Notwithstanding the allegedly unforeseeable criminal acts against her, *Martinez* compels the conclusion that, based on their legal relationship with decedent, the mall defendants owed her a common law duty to use "reasonable care to prevent harm from criminal intrusion" while she was using the mall's common area. *Id.* at 210, 941 P.2d at 222.

The mall defendants also urge us to affirm summary judgment on two other bases: they were not required to warn or protect decedent because the crimes against her were unforeseeable as a matter of law, and Trostle's and Jewitt's crimes were intervening, superseding acts that broke the chain of causation. Although we generally will affirm summary judgment if it is correct on any ground, *Glaze v. Marcus*, 151 Ariz. 538, 729 P.2d 342 (App.1986), we decline to address the merits of these arguments or resolve the issues they raise for several reasons. First, when the trial court granted summary judgment, discovery was not yet complete as to the mall defendants. Consequently, we do not have the benefit of a fully developed record. Second, because the trial court granted plaintiff additional time under Rule 56(f) for discovery on his theory that the mall defendants had breached their voluntarily assumed duty to patrol the parking lots, discovery has continued and is ongoing at this time. Third, and perhaps most importantly, the trial court based its ruling strictly on the absence of a common law duty. As noted above, that ruling does not survive *Martinez*.

■ The parties did not fully litigate, and the trial court did not specifically address or rule on, the issues of breach of duty (negligence) or causation.[5] Foreseeability certain-

---

**4.** Based on our reading of *Martinez*, foreseeability is not a relevant factor in the threshold legal determination of duty. If our interpretation is correct, however, that proposition seems to conflict with prior pronouncements of the supreme court and court of appeals. *See, e.g., Rager v. Superior Coach Sales & Serv.*, 111 Ariz. 204, 210, 526 P.2d 1056, 1062 (1974) ("[W]hether or not there is a duty on the part of the defendant to protect the plaintiff from the injury of which he complains is based on foreseeability."); *Riddle v. Arizona Oncology Services*, 186 Ariz. 464, 924 P.2d 468 (App.1996); *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266, 782 P.2d 739, 742 (App.1989) ("[O]ne element of duty is foreseeability."); *Chavez v. Tolleson Elem. Sch. Dist.*, 122 Ariz. 472, 595 P.2d 1017 (App.1979); *City of Scottsdale v. Kokoska*, 17 Ariz.App. 120, 126, 495 P.2d 1327, 1333 (1972) ("[I]n the first instance foreseeability is always a question of law for the court."). It also varies from the approach other states have taken in similar cases. *See, e.g., Boren v. Worthen National Bank of Arkansas*, 324 Ark. 416, 921 S.W.2d 934, 940 (1996) ("[T]he foreseeability of the criminal act is a crucial element in determining whether a duty is owed."); *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207 (1993) (same); *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 899 P.2d 393 (1995); *Seibert v. Vic Regnier Builders*, 253 Kan. 540, 856

P.2d 1332 (1993); *Whittaker v. Saraceno*, 418 Mass. 196, 635 N.E.2d 1185 (1994); *Clohesy v. Food Circus Supermarkets*, 149 N.J. 496, 694 A.2d 1017 (1997); *Foster v. Winston–Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36 (1981); *Small v. McKennan Hosp.*, 437 N.W.2d 194 (S.D. 1989); *Nivens v. 7–11 Hoagy's Corner*, 943 P.2d 286, 293 (Wash.1997) ("No duty arises unless the harm to the invitee by third persons is foreseeable."); *Krier v. Safeway Stores 46*, 943 P.2d 405 (Wyo.1997). *See generally* Marjorie A. Caner, Annotation, *Liability of Owner or Operator of Shopping Center, or Business Housed Therein, for Injury to Patron on Premises from Criminal Attack by Third Party*, 31 A.L.R. 5th 550 (1995).

**5.** The mall defendants did not argue either in the trial court or on appeal that summary judgment is warranted on breach of duty grounds. *See Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984). Although they raised foreseeability as an issue in their motion for summary judgment, contrary to the mall defendants' suggestion, it does not appear the trial court made any ruling on that issue. As plaintiff notes, if the trial court had ruled against him on that issue, the question of whether the mall defendants had voluntarily assumed and reasonably exercised a duty would be irrelevant. Moreover, this court's opinion in *Martinez* did not address or resolve

ly is a relevant factor bearing on both of those issues. *See, e.g., Alhambra School District v. Superior Court,* 165 Ariz. 38, 796 P.2d 470 (1990); *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n,* 177 Ariz. 256, 866 P.2d 1342 (1994); *Markowitz,* 146 Ariz. at 357, 706 P.2d at 369 ("The test for whether conduct is negligent is whether there is a foreseeable risk of injury from the conduct."); *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078 (1984); *Tellez v. Saban,* 188 Ariz. 165, 172 n. 5, 933 P.2d 1233, 1240 n. 5 (App.1996) ("Foreseeability of risk plays a dual role in negligence: it not only defines the standard of care but also determines whether an actor's conduct was the proximate cause of the injury."). As our supreme court stated in *Martinez,* a property owner's "duty of care may include measures to protect others from criminal attacks, *provided the attacks are reasonably foreseeable and preventable,*" 189 Ariz. at 211, 941 P.2d at 223 (emphasis added), and "the circumstances will dictate what is reasonable to protect others from foreseeable and preventable danger." *Id.*

█ The "circumstances" here are not totally clear because of several significant evidentiary gaps bearing on the negligence and causation issues in this case. For example, the record lacks specific details of Trostle's and Jewitt's location, activities, and visibility on the mall property before they abducted decedent.[6] Although plaintiff presented this court with a summary of voluminous Tucson Mall incident reports, much of which the trial court did not have an opportunity to review, questions remain as to the relevance and admissibility of the crime data contained therein. In addition, it is not clear whether the mall defendants knew or should have known that decedent and other RGIS employees were working late on the Sunday night in question. We also note that the

record does not reveal, and plaintiff's counsel was unable to tell this court at oral argument, what the mall defendants supposedly should have done in order to fulfill their duty of reasonable care, for example, by providing security patrols 24 hours per day, seven days per week, or by personally escorting mall employees to their vehicles after hours. Moreover, plaintiff's security expert apparently has not yet rendered an opinion on those topics, although he stated in an affidavit that Tucson Mall has all the characteristics that make it attractive to criminals and that the crimes against decedent were "readily foreseeable."

Based on the incomplete record before us, we cannot say as a matter of law that the criminal acts against decedent were unforeseeable or constituted a superseding cause. *Cf. Ammer v. Arizona Water Co.,* 169 Ariz. 205, 211, 818 P.2d 190, 196 (App.1991) ("We will affirm a grant of summary judgment on an issue raised for the first time on appeal only if no conceivable facts exist under which the nonmoving party could prevail on the issue."). We do not foreclose such determinations, however, based on future evaluation of a fully developed record. Under the circumstances, we believe any legal issues relating to breach of duty and causation are best left for initial consideration and determination by the trial court, after the parties have marshaled and presented all relevant facts. *See Seibert v. Vic Regnier Builders,* 253 Kan. 540, 856 P.2d 1332 (1993); *cf. City of Phoenix v. Yarnell,* 184 Ariz. 310, 320, 909 P.2d 377, 387 (1995) ("[I]t is incorrect to direct entry of summary judgment on issues not raised by the movant in the trial court and on which the parties have therefore not had an opportunity to marshal and present evidence."). We express no opinion on how those issues should be resolved or on how *Martinez* might or might not affect their ultimate disposition.[7]

any foreseeability issues. Since the trial court found that opinion "dispositive of the plaintiff's action on the issue of common law duty," it apparently did not evaluate or base its ruling on foreseeability.

6. In opposing summary judgment below, plaintiff presented and relied on recorded statements Trostle and Jewitt had given police. The mall defendants objected to plaintiff's use of "un-

sworn statements of third parties to the litigation." Although the trial court apparently did not rule on those evidentiary issues, it may have to do so on remand.

7. We find distinguishable, however, *Shaner v. Tucson Airport Authority,* 117 Ariz. 444, 573 P.2d 518 (App.1977), on which the trial court relied in denying plaintiff's motion for reconsideration. In *Shaner,* this court affirmed a directed verdict

2. Summary Judgment for Walden

 Plaintiff contends that Walden breached its duty to provide decedent with a reasonably safe place to work. "[A]n employer in Arizona has a duty to provide [its] employees with a reasonably safe place to work" and "may be liable for mere failure to act to protect [its] employees from reasonably foreseeable criminal conduct." *Circle K Corp. v. Rosenthal,* 118 Ariz. 63, 68, 574 P.2d 856, 861 (App.1977). Assuming *arguendo* the employer's duty extends not only to its own employees but also to an independent contractor's employees like decedent, *Circle K* is not controlling here. Unlike the plaintiff in that case, decedent was not on the employer's premises when she was assaulted and abducted. In addition, plaintiff is not claiming that Walden breached any duty to protect or warn decedent against foreseeable harm in the mall parking lot, an area over which Walden had no responsibility or control. There is no evidence that Walden failed to provide a safe work place within the meaning of *Circle K* and, therefore, no basis to hold Walden liable under that theory.

 Plaintiff also contends Walden voluntarily assumed and breached a duty to inform mall management that RGIS employees would be working after hours on mall premises, so the mall could make appropriate security arrangements. A party may voluntarily assume a duty not imposed at common law and, once assumed, must discharge the duty with reasonable care. *Tollenaar v. Chino Valley School Dist.,* 190 Ariz. 179, 945 P.2d 1310 (App.1997); *Martinez v. State,* 177 Ariz. 270, 866 P.2d 1356 (App.1993). Walden's regular practice was to notify mall management whenever employees or others would be working in the store after hours. Walden's manager believes she notified the mall that an inventory would be performed after closing time on September 19, 1993. The mall defendants, however, were unable to find any documentation verifying that; therefore, they do not concede that they received any such notice.

According to plaintiff, that factual discrepancy precludes summary judgment for Walden. We disagree. There is no evidence that decedent knew or believed that Walden routinely notified the mall when people were expected to work after hours at Walden and no evidence that decedent relied in any way on Walden to notify the mall that she would be working late on September 19, 1993. Similarly, there is no evidence that decedent would have acted any differently even had she known or believed that Walden had failed to follow its normal practice of notifying the mall when people would be working late. Perhaps most importantly, there is no evidence the mall would have acted any differently had Walden notified it that decedent and others were scheduled to work late on September 19. Thus, assuming Walden did not inform mall security that people would be working late that night, there is no evidence decedent was placed in a worse position than she would have been in otherwise.

In its motion for summary judgment, Walden contended "there is no evidence to support a claim that [it] ... breached a duty to [decedent]." It therefore was incumbent on plaintiff to "show that evidence is available which would justify a trial of that issue." *Pendleton v. Cilley,* 118 Ariz. 84, 86, 574 P.2d 1303, 1305 (1978). Plaintiff failed to present triable issues of fact concerning breach of duty or causation related to Walden. Considering the aforementioned factual deficiencies, summary judgment for Walden was appropriate. *See Tollenaar; Miller v. Arnal Corp.,* 129 Ariz. 484, 632 P.2d 987 (App.1981); Restatement (Second) of Torts § 323 (1965); W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 56, at 381 (5th ed.1984).

## CROSS–APPEAL

In the trial court, the mall defendants moved to compel joinder of decedent's estate and her mother as persons needed for just adjudication under Rule 19, Ariz. R. Civ. P.,

---

for defendants because the jury would have been "left to sheer speculation on the issue of causation" since "there [was] no evidence of what happened [to decedent] in the parking lot." *Id.* at 448, 573 P.2d at 522. In contrast, the record here contains sufficient evidence concerning what happened to decedent in the mall parking lot and who her assailants were. This does not necessarily mean, however, that the crimes against her were reasonably foreseeable.

or in the alternative, to dismiss for failure to join those parties. The trial court denied the motion. The mall defendants' motion did not question "the ability of the Plaintiff to bring this action" and "readily acknowledge[d] that the named Plaintiff may act as a Proper Plaintiff in this state." In their cross-appeal, as they argued in their reply in the trial court, the mall defendants contend that only the personal representative of decedent's estate could bring this action under A.R.S. § 12–612 and that, without her joinder, the case must be dismissed.[8]

◾ Preliminarily, we note that the mall defendants' cross-appeal is from the trial court's unsigned, interlocutory minute entry that denied their motion to compel joinder or, alternatively, to dismiss the case. Such an order is not appealable. *Henke v. Superior Court*, 161 Ariz. 96, 775 P.2d 1160 (App. 1989). Nonetheless, because the issue was timely raised, litigated, and ruled on in the trial court, affects a final judgment, and involves a fundamental and purely legal question of whether plaintiff is a proper party, we address the merits of the cross-appeal. *See Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 284, 848 P.2d 856, 863 (App. 1992) (when appellate court has jurisdiction over appeal from final judgment, "we can review other 'intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error ....'") (*quoting* A.R.S. § 12–2102(A)); *cf. Cardon v. Cotton Lane Holdings*, 173 Ariz. 203, 841 P.2d 198 (1992). "To refuse to consider this issue would be to foster piecemeal litigation, not prevent it." *State Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 194, 812 P.2d 1002, 1012 (App.1990).

◾ Arizona courts have not specifically addressed this issue of statutory interpreta-

tion, which we review *de novo*.[9] *Wallace v. Casa Grande Union High Sch. Dist. No. 82*, 184 Ariz. 419, 909 P.2d 486 (App.1995). "The right of action for wrongful death is purely statutory and the action must be brought in the names of the persons to whom the right is given by statute." *Solomon v. Harman*, 107 Ariz. 426, 428, 489 P.2d 236, 238 (1971). In our effort to discern the legislature's intent, the ultimate goal in statutory construction, "we look first to the statute's words." *In re Denton*, 190 Ariz. 152, 155, 945 P.2d 1283, 1286 (1997). Section 12–612 provides in pertinent part:

> **A.** An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.
>
> **B.** Either parent may maintain the action for death of a child, and the guardian for death of his ward.

The mall defendants concede that plaintiff, as decedent's surviving parent, is a proper beneficiary under § 12–612(A) and (C). Despite that fact, they assert that § 12–612(A) does not authorize a parent to bring a wrongful death action unless he or she is personal representative of the decedent's estate. Relying on the statutory definition of "child" in A.R.S. § 1–215,[10] the mall defendants further contend that § 12–612(B) applies only to parents of *minor* children. Since decedent was 26 years old when she died, they argue, her father may not maintain this action as the named plaintiff. We disagree.

◾ Decedent's mother is deceased (apparently she did not survive decedent) and, therefore, is not a beneficiary. Decedent's estate also is not a proper beneficiary in this case since decedent was survived by her

8. Apparently decedent's sister was the personal representative of her estate.

9. Although this court has not addressed the specific argument the mall defendants have urged in this case, we have allowed the mother, and later the personal representative of the mother's estate, to bring a wrongful death action for the death of her 47–year–old daughter. *Katz v. Filandro*, 153 Ariz. 601, 739 P.2d 822 (App.1987). Conversely, this court has stated in *dictum* that "an action for wrongful death *shall* be brought either by the surviving spouse or the decedent's

personal representative and in the case of a deceased unmarried minor, the personal representative, parent, or guardian." *Hutton v. Davis*, 26 Ariz.App. 215, 216 n. 1, 547 P.2d 486, 487 n. 1 (1976).

10. Section 1–215(5) provides: "In the statutes and laws of the state, unless the context otherwise requires[,] ... '[c]hild' or 'children' as used in reference to age of persons means persons under the age of eighteen years."

father, a statutory beneficiary. *See Solomon; Katz v. Filandro,* 153 Ariz. 601, 739 P.2d 822 (App.1987). Therefore, decedent's estate is not an indispensable party, and the trial court did not err in denying the mall defendants' motion on that basis. *Arizona Board of Regents v. State of Arizona,* 160 Ariz. 150, 158, 771 P.2d 880, 888 (App.1989) (" 'The test of indispensability therefore is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court, without injuriously affecting the rights of others not brought into the action.' ") (*quoting Bolin v. Superior Court,* 85 Ariz. 131, 134, 333 P.2d 295, 297 (1958)).

■ We reject the mall defendants' attempt to limit § 12–612(B) to parents of deceased minor children. Our supreme court has identified any of the following as "proper parties plaintiff" in a wrongful death action: the surviving husband or wife, the personal representative, a parent, or the guardian. *Solomon,* 107 Ariz. at 428, 489 P.2d at 238. Moreover, § 12–612(B) expressly permits either parent to maintain a wrongful death action for death of a child.[11] Despite the statutory definitions in § 1–215(5), Arizona courts have not limited the term "children" in § 12–612(A) to minors, but rather have recognized adult children's status and right to recovery as statutory beneficiaries under subsections (A) and (C). *See Williams v. Superior Court,* 169 Ariz. 468, 470, 820 P.2d 332, 334 (App.1991) (recognizing surviving adult child's right to attend all depositions and participate in damage-related procedures and noting that "[i]n a wrongful death action the only statutory plaintiff may be a surviving spouse, *or* a personal representative, parent, or guardian"); *Sedillo v. City of Flagstaff,* 153 Ariz. 478, 737 P.2d 1377 (App.1987); *cf. Hurt v. Superior Court,* 124 Ariz. 45, 50, 601 P.2d 1329, 1334 (1979) ("[B]oth a surviving parent and surviving child may recover for the wrongful death if either has been damaged by the death.").

There is no indication that the legislature intended the term "child" in subsection (B) to have or be given a different or more restrictive meaning than that ascribed to "children" in subsection (A), and we are not inclined to do so. As our supreme court has stated, "we must adhere to the plain language of the statute, leaving any deficiencies or inequities to be corrected by the legislature." *Bowslaugh v. Bowslaugh,* 126 Ariz. 517, 519, 617 P.2d 25, 27 (1979). Accordingly, plaintiff is entitled to maintain this action as decedent's surviving parent.

CONCLUSION

For the reasons stated above, we hold plaintiff is a proper party to bring this action under A.R.S. § 12–612. We affirm the judgment for Walden, reverse the partial summary judgment for the mall defendants, and remand for further proceedings consistent with this decision.

ESPINOSA and HOWARD, JJ., concur.

---

**11.** Similarly, A.R.S. § 12–641 provides that "[e]ither parent may maintain an action for the injury of a child," and no reported Arizona decisions have limited that statute to actions for injuries to minor children. In a different, but analogous, context, our supreme court has recognized the right of parents to sue and recover loss of consortium damages caused by injuries to an adult child. *Howard Frank, M.D., P.C. v. Superior Court,* 150 Ariz. 228, 722 P.2d 955 (1986) (also noting that A.R.S. § 12–613 does not distinguish between minor and adult children).